## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Harmony East Condominium Association,<br><br>Plaintiff,<br><br>v.<br><br>Falls Lake Fire and Casualty Company,<br><br>Defendant. | Case No. 24-cv-2048 (SRN/ECW)<br><br><br>**ORDER** |

Brenda Sauro and Brock P. Alton, Sauro & Alton, PLLC, 8519 Eagle Point Boulevard, Suite 170, Lake Elmo, MN 55042, for Plaintiff.

Dennis Charles Anderson and Akira Céspedes Gilheany, Zelle LLP, 500 Washington Avenue South, Suite 4000, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Falls Lake Fire and Casualty Company's Motion to Dismiss [Doc. 9] and Plaintiff Harmony East Condominium Association's Motion to Compel Appraisal and Appoint an Umpire [Doc. 16]. For the reasons below, the Court denies the Motion to Dismiss and grants the Motion to Compel Appraisal and Appoint an Umpire.

## I.    Background

Harmony is a homeowner association that manages and maintains a community of 176 townhome units within 25 buildings in Rosemount, Minnesota. (Doc. 1–1 at 7 ¶ 1.) It purchased an all-risk insurance policy with Falls Lake, effective May 1, 2022. (*Id.* at 8 ¶ 5.) And around May 11, a storm damaged its property. (*Id.* at 11 ¶ 21.)

1

### A.     Fall 2022

Harmony hired a public adjusting firm to evaluate the extent of the damage.  (*Id.* ¶ 22.)  The adjuster submitted a claim on August 2 and "prepar[ed] an estimate for the replacement cost for damages occasioned by the Storm in the amount of $2,382,132.10." (*Id.* ¶¶ 23–25.)

Two weeks later, an adjuster for Falls Lake inspected the property, and the next week, Falls Lake sent a "reservation of rights letter" highlighting several "potential Policy exclusions."  (*Id.* ¶¶ 26–27.)  The letter did not mention the Policy's "Suit Against Company" provision.  (*Id.* ¶ 28.)  That provision reads:

> No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless [Harmony] shall have fully complied with all the requirements of this policy, nor unless the same be commenced within twelve (12) months next after inception of the loss provided, however, that if under the laws of the jurisdiction in which the property is located such limitation is invalid, then any such claims shall be void unless such action, suit or proceedings be commenced within the shortest limit of time permitted by the laws of such jurisdiction.

(Doc. 12-1 at 50 ¶ 32.)

In mid-October, Falls Lake sent an engineering firm to conduct a second inspection, and on November 23, Falls Lake officially denied the claim.  (Doc. 1-1 at 12 ¶¶ 29, 31.)  It found that there was no evidence of hail damage to the shingles; that any damage to metals happened before the policy period; and that any damage to siding, windows, or screens either happened before the policy period or was ordinary wear and tear.  (*Id.* ¶ 31.)  Again, it did not warn Harmony about the Suit Against Company provision.  (*Id.* ¶¶ 32–33.)

**B.    Summer 2023**

On July 17, 2023—a couple of months after the anniversary of the storm—Harmony demanded appraisal and named an appraiser. (*Id.* at 13 ¶ 37.) Falls Lake responded ten days later with a letter naming its own appraiser but stating that it considered the appraisal demand defective without a signature from Harmony's board. (*Id.* ¶¶ 38–39.) The letter also made several requests for information, including information about Harmony's prior losses. (*Id.* ¶ 38.)

This time, Falls Lake cited the Suit Against Company provision, but it provided no explanation as to its impact in this matter. (*Id.* at 14 ¶¶ 41–44.) So believing that Minnesota Statute § 65A.01 requires at least two years to file suit, Harmony did not understand Falls Lake to assert that Harmony's claim was time-barred. (*Id.*) In fact, the letter stated that Falls Lake understood Harmony's claim was not resolved and that the parties would work "toward resolution of [Harmony's] insurance claim." (*Id.* ¶ 45.)

Consistent with this understanding, Falls Lake continued to engage with Harmony for several months. (*Id.* at 15–19 ¶¶ 51–75.) In a series of August emails, Falls Lake wrote that it was "eager" to move the process along, reminded Harmony about the information it had requested, and warned that the delay might push the appraisal process back to next spring. (*Id.* at 15 ¶¶ 51–53.)

**C.    Fall 2023**

In September, Falls Lake asserted for the first time that any lawsuit would be time-barred. (*Id.* at 16 ¶ 56.) But it also wrote that Falls Lake would only close the file if it did not receive the requested information, and that it had instructed its appraiser to cease

communications with Harmony's appraiser until its board signed the appraisal demand—implying, of course, that talks would continue if Harmony cooperated. (*Id.* ¶¶ 54–55.) On the same day, Harmony responded that it was still trying to find the information. (*Id.* ¶ 59.) And when Harmony sent the same update a few weeks later, Falls Lake simply wrote "thank you." (*Id.* at 17 ¶ 51.)

In mid-October, Falls Lake sent a "Notice of File Closure" based on Harmony's failure to produce the requested information. (*Id.* ¶ 62.) But when Harmony once again responded that it was still searching, Falls Lake said it would consider future responses. (*Id.* ¶¶ 63–64.) The next week, Harmony provided a letter signed by its president confirming its appraisal demand and explained that it was having trouble finding the requested information because it had changed management companies. (*Id.* ¶ 65.) Then a few days later, Harmony gave Falls Lake all the information it could find. (*Id.* at 18 ¶ 69.)

On December 19, Falls Lake upheld its denial while again noting that additional information might change its view. (*Id.* ¶ 70.)

**D.    Spring 2024**

The parties exchanged several more emails in December, January, and February. Then Falls Lake finally said that Harmony needed to either "provide [the] information or let it go." (*Id.* at 18–19 ¶¶ 71–75.) On March 19, 2024, Falls Lake sent a "Notice of Claim Denial and File closure" stating that it stood by its original denial and re-alleging that the claim was time-barred. (*Id.* at 20 ¶ 82).

On May 2, 2024—just under two years after the storm—Harmony sued Falls Lake in state court. (Doc. 1-1.) It sought an order declaring the rights and obligations of the

4

parties, directing Falls Lake to proceed with the appraisal process, estopping Falls Lake from arguing that the suit is time-barred, and reforming the Policy to comply with Minnesota Statute § 65A.01. (*Id.* at 21–22, 24–29.) It also sought damages for breach of contract. (*Id.* at 23–24, 29.)

After removing the case to federal court, Falls Lake moved to dismiss the case, arguing that Harmony's claim is time-barred. (Doc. 9.) Harmony then moved to compel appraisal and appoint an umpire. (Doc. 16.) After a full round of briefing, the Court heard oral argument, and the parties followed up with supplemental briefs. (Docs. 11, 18, 23, 28, 30, 31, 32, 36, 37, 38, 39.)

## II.    Motion to Dismiss

To survive Falls Lake's Motion to Dismiss, Harmony's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Harmony's claim is plausible if it "pleads factual content that allows the court to draw the reasonable inference that [Falls Lake] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to Harmony, but the Court need not accept as true any legal conclusions couched as factual allegations. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). Although the Court ordinarily will not consider matters outside the pleadings on a motion to dismiss, it may consider exhibits attached to the complaint along with

materials that are necessarily embraced by the pleadings—for example, the Policy [Doc. 12-1]. *Buckley v. Hennepin Cty.*, 9 F.4th 757, 760 (8th Cir. 2021).

Minnesota has a general six-year statute of limitations for all contract actions. Minn. Stat. § 541.05, subd. 1(1). But parties to an insurance contract "may limit the time within which an action may be brought to a period less than that fixed by the general statutes of limitation." *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins.*, 383 N.W.2d 645, 650 (Minn. 1986) (citation omitted). "Such provisions, however, are not generally favored and are strictly construed against the party invoking them." *Id.* at 651.

Minnesota courts analyze whether a shortened time limit is valid in two steps. First, they "look to see if a specific statute prohibits the use of a different limitation period in the particular case." *Id.* Then, if none exists, they ask whether the limitation was "reasonable" under the circumstances. *Id.*

## A.    Statutory Analysis

The Court finds that Minnesota's fire and hail insurance statutes neither prohibit nor require a one-year limitation here, but an administrative rule prohibits a limitation of less than two years.

### 1.    Minnesota Statute § 65A.01 – The Fire Statute

Harmony first argues that the limitation must be two years under Minnesota's "Standard Fire Insurance Policy" statute, Minn. Stat. § 65A.01, subd. 1. (Doc. 23 at 14–18.) The Minnesota Supreme Court has already held that "the provisions of [§ 65A.01] apply only to fire losses, and not nonfire losses, under an all-risk insurance policy." *Henning*, 383 N.W.2d at 651 n.8. And Harmony does not allege fire losses. But Harmony

argues that the "Conformity to Statute" provision of the Policy makes a difference here. That provision says, "Terms of this policy in conflict with the written laws of the state in which the policy is issued are changed to conform to such laws." (Doc. 12-1 at 51 ¶ 36.) So Harmony asserts that the Conformity to Statute provision rewrites the Suit Against Company provision to say, "No suit . . . for the recovery of any claim under this policy shall be sustainable . . . unless commenced within ~~twelve~~ twenty four (~~12~~ 24) months next after inception of the loss." (Doc. 23 at 17.)

The Court disagrees. The second half of the Suit Against Company provision provides "that if under the laws of the jurisdiction in which the property is located [the one-year] limitation is invalid, then any such claims shall be void unless such action, suit or proceedings be commenced within the shortest limit of time permitted by the laws of such jurisdiction." (Doc. 12-1 at 50 ¶ 32.) In other words, even if the one-year limitation is unlawful, the Suit Against Company provision reforms itself to match the shortest legal time limit. Thus, it is never "in conflict with the written laws of" Minnesota—not even when it comes to fire losses—and the Conformity to Statute provision never kicks in to "change[]" it. (*Id.* ¶ 36.)

The Court therefore finds that as applied to nonfire losses, Minnesota Statute § 65A.01 does not extend the Policy's one-year limitation to two years.

### 2.    Minnesota Statute § 65A.26 – The Hail Statute

Falls Lake, for its part, argues that the Policy's one-year limitation is required under Minnesota's "Hail insurance, policies, loss adjustment" statute, Minn. Stat. § 65A.26. (Doc. 11 at 8; Doc. 31 at 5.) The hails statute provides:

> Every policy of insurance against damage by hail issued by any company, however organized, must provide as follows: " . . . . No suit for the recovery of any claim by virtue of this policy may be sustained unless commenced within one year after the loss occurred."

Minn. Stat. § 65A.26.  Falls Lake interprets this to mean that "all insurance policies that provide coverage against hail [must] include a one-year suit limitation provision."  (Doc. 31 at 8.)

The Court disagrees.  Falls Lake's interpretation would create a conflict.  The fire statute requires all-risk policies to have a two-year limitation as to fire losses.  *See* § 65A.01; *Henning*, 383 N.W.2d at 651 n.8.  And under Falls Lake's interpretation, the hail statute would require an all-risk policy to have a one-year limitation.  Yet the hail statute has no carveouts for fire or other non-hail losses.  *See* § 65A.26.

The more natural interpretation is that the hail statute applies only to hail-specific policies.  The fire statute, which was passed in the same 1967 bill, provides a helpful comparison.  *See* 1967 Minn. Laws 762, 777 (c. 395, art. 6, §§ 1, 26).  It reads:

> The printed form of a policy of fire insurance, as set forth in subdivisions 3 and 3a, shall be known and designated as the "Minnesota standard fire insurance policy" to be used in the state of Minnesota.  No policy or contract of fire insurance shall be made, issued or delivered by any insurer including reciprocals or interinsurance exchanges or any agent or representative thereof, on any property in this state, unless it shall provide the specified coverage and conform as to all provisions, stipulations, and conditions, with such form of policy . . . .  Any policy or contract . . . which includes either on an unspecified basis as to coverage or for a single premium, coverage against the peril of fire and coverage against other perils may be issued without incorporating the exact language of the Minnesota standard fire insurance policy, provided: Such policy or contract shall, with respect to the peril of fire,

> afford the insured all the rights and benefits of the Minnesota
> standard fire insurance policy and such additional benefits as
> the policy provides . . . .

Minn. Stat. § 65A.01, subd. 1. The fire statute recognizes that "a policy of fire insurance" is different from an all-risk policy—*i.e.*, a "policy . . . which includes . . . coverage against the peril and coverage against other peril." *Id.* And it specifies that the former must use the language of the Minnesota standard fire insurance policy, while the latter "may be issued without incorporating the exact language" as long as it "afford[s] the insured all the rights and benefits of the" standard policy "with respect to the peril of fire." *Id.*

If the Minnesota Legislature had also wanted the hail statute to cover all-risk policies, it would have likewise applied the statute's protections to policies *which include* coverage against damage by hail *and* coverage against other peril—not just policies "of insurance against damage by hail." § 65A.26. The inference to be drawn from the Legislature's decision not to mention other peril in the hail statute is that the Legislature did not intend for the hail statute to regulate all-risk policies. *Cf. State v. Expose*, 872 N.W.2d 252, 258–59 (Minn. 2015) (Stras, J.) (citing *Burlington N. v. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–63 (2006) ("[T]he question is whether Congress intended its different words to make a legal difference. We normally presume that, where words differ as they differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"))); *Fore v. Crop Hail Mgmt.*, 270 N.W.2d 13 (Minn. 1978) (per curiam) (discussing § 65A.26 as applying to an insurance policy against hail damage to crops); *Dorn v. Home Farmers Mut. Ins. Ass'n*, 220 N.W.2d 503 (Minn. 1974) (same).

Because the Policy is an all-risk policy, (Doc. 12-1 at 20,) the Court finds that Minnesota Statute § 65A.26 does not apply.

### 3.    Minnesota Rule § 2700.0300

Finally, Harmony points to a Minnesota Department of Commerce rule that "[n]o policy, rider, or endorsement form shall be accepted for filing by this department from any casualty insurance company that contains a provision limiting the time within which legal proceedings may be instituted against the insurer by the insured to a period less than two years."  Minn. R. 2700.0300.  (Doc. 36 at 2–4.)  Falls Lake's sole argument against applying Rule 2700.0300 is that it conflicts with the hail statute, and "when an administrative rule conflicts with the plain meaning of a statute, the statute controls."  *Spec. Sch. Dist. No. 1 v. Dunham*, 498 N.W.2d 441, 445 (Minn. 1993).  (Doc. 37 at 4–6; Doc. 38 at 1–3.)

Because the court finds that the hail statute does not require a one-year suit limitation in all-risk policies, the Court disagrees that Rule 2700.0300 conflicts with it. And because Rule 2700.0300 does not conflict with a statute, it has the force and effect of law.  Minn. Stat. § 14.38, subd. 1; *Minn. Energy Res. Corp. v. Comm'r of Revenue*, 886 N.W.2d 786, 801 (2016).  Under the Policy's Suit Against Company provision, the suit limitation is the "shortest limit of time permitted by the laws of" Minnesota.  (Doc. 12-1 at 50 ¶ 32.)  So the proper suit limitation under the Policy is two years, and Harmony's suit is not time-barred.

### B.   Alternative Analysis

Even if a one-year time limit were permissible, dismissal would be inappropriate at this stage.  Harmony has plausibly pleaded facts to support claims that the one-year limitation was unreasonable, that Harmony waived the one-year time limit, and that Harmony should be estopped from asserting it.

### 1.   Reasonableness

To start, Harmony argues that the one-year time limit is unreasonable under the specific facts of this case.  (Doc. 23 at 18–22.)  The Court finds that Harmony has plausibly pleaded facts to support this claim.

Even when a limitations period is allowed by statute, it may be invalid because it is "unreasonably short"—as decided on a "case-by-case basis, looking at the particular facts of each case." *Henning*, 383 N.W.2d at 651.  "Among the factors to be used in determining reasonableness [are] the amount of time remaining under the limitations clause after the insurer denies a claim," "whether additional information was needed for the insured's cause of action to mature," and "whether the parties held equal bargaining power in negotiating the contract." *Michael Foods, Inc. v. Allianz Ins.*, No. 2-cv-3504, 2003 WL 1956294, at *2 (D. Minn. 2003) (citations omitted).

The pleadings make clear that Harmony had more than five months between the initial, non-final denial in November 2022 and the storm's anniversary in May 2023.  And courts have found similar amounts of time sufficient.  *E.g.*, *id.* at *3 (six months); *Minn. Mut. Fire & Cas. Co. v. N. Lakes Const., Inc.*, 400 N.W.2d 367, 370 (Minn. Ct. App. 1987) (three months).  But Harmony also alleges that the parties continued their dealings through

May 2024, giving rise to an inference that Harmony did not have the information it needed for its cause of action to mature—a final denial—until well past the deadline. *See Henning*, 383 N.W.2d at 651 (upholding finding that one-year limitation was unreasonably short where claims timeline was drawn-out far beyond the deadline). Moreover, a reasonable factfinder could infer that Harmony is less sophisticated and had less bargaining power than Falls Lake. *See Varela v. State Farm Mutual Insurance*, 655 F. Supp. 3d 813, 822–23 (D. Minn. 2023) (noting that the plaintiff was far less sophisticated than the insurer); *cf. Michael Foods*, 2003 WL 1956294, at *3 (noting that "plaintiff is a highly sophisticated company that worked with an insurance broker"). While Harmony alleges that it worked with a public adjusting firm that presumably should have known about the suit limitations period, the pleadings do not indicate whether the firm was sophisticated or brought significant negotiating power to the table.

Although there are facts in the record that support Falls Lake's position, considering that reasonableness is a fact-intensive inquiry, it would be inappropriate to dismiss Harmony's unreasonableness claim at the pleadings stage—it will require a full factual record for resolution.

### 2.    Waiver

Harmony also argues that Falls Lake waived its rights under the Suit Against Company provision. (Doc. 23 at 24–30.) The Court finds that Harmony has plausibly alleged facts to support this claim.

"Waiver is a voluntary relinquishment of a known right." *Pollard v. Southdale Gardens of Edina Condo. Ass'n, Inc.*, 698 N.W.2d 449, 453 (Minn. Ct. App. 2005). "The

party alleging waiver must provide evidence that the party that is alleged to have waived the right possessed both knowledge of the right in question and the intent to waive that right." *Ill. Farmers Ins. v. Glass Serv. Co.*, 683 N.W.2d 792, 798 (Minn. 2004). "Waiver is ordinarily a question of fact for a jury, unless only one inference may be drawn from the facts." *Pollard*, 698 N.W.2d at 453.

Taking Harmony's allegations as true, a reasonable jury could find that Falls Lake intentionally waived the Suit Against Company provision's time bar by failing to enforce it. *See O'Reilly v. Allstate Ins.*, 474 N.W.2d 221, 223–24 (Minn. Ct. App. 1991) (trial court "could have treated [the insurer's statute of limitations] defense as waived" where insurer "fail[ed] to notify [the insured] of its intent to rely on the contractual limitation period as a bar to her claim" in violation of the Unfair Claims Practices Act); *cf. Pollard*, 698 N.W. 2d at 454 (finding dispute of material fact as to whether a condominium association waived a pet rule by either failing to enforce it or selectively enforcing it). Falls Lake's "failure at any time to mention or even to hint at" the time bar until September 2023—well past the deadline—"indicates, as strongly as acts can indicate, that [it] intended to waive the . . . provision." *Green v. Minn. Farmers' Mut. Ins.*, 251 N.W. 14, 17 (Minn. 1933) (affirming finding that insurance company waived a suspension provision by failing to notify the insured of the alleged suspension). If Falls Lake intended to enforce a one-year limitation, it made no sense for it to lead Harmony on by continuing the claims process after May 2023. Yet Falls Lake promised to continue working to resolve Harmony's claims and renewed its requests for information throughout the summer. Even after September, when it first asserted that any suit would be time-barred, Falls Lake continued its dealings with

Harmony. It was not until March 2024 when Falls Lake stopped saying that more information might change its view.

### 3.    Estoppel

For similar reasons, Harmony argues that Falls Lake is equitably estopped from asserting a one-year time bar. (Doc. 23 at 24–30.) Again, the Court finds that Harmony has plausibly alleged facts to support this claim.

"Equitable estoppel prevents the assertion of otherwise valid rights where one has acted in such a way as to induce another party to detrimentally rely on those actions." *Pollard*, 698 N.W.2d at 454 (quoting *Drake v. Reile's Transfer & Delivery, Inc.*, 613 N.W.2d 428, 434 (Minn. Ct. App. 2000)). A party invoking equitable estoppel must show "(1) that promises or inducements were made; (2) that they reasonably relied upon the promises; and (3) that they will be harmed if estoppel is not applied." *Id.* (citing *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990)). Equitable estoppel "ordinarily presents a question of fact, unless only one inference can be drawn from the facts." *Id.*

Harmony alleges that Falls Lake induced Harmony to refrain from suing by failing to notify it of the impending deadline and requesting unnecessary information. Harmony also alleges that it relied on Falls Lake's inducements, continuing to search for documents rather than suing. And finally, Harmony will be harmed if estoppel is not applied—it will be unable to seek payment from its insurer to repair the alleged storm damage. These allegations are sufficient. *See Eng'g & Const. Innovations, Inc. v. W. Nat. Mut. Ins.*, No. A12-1785, 2013 WL 2460400, at *5 (Minn. Ct. App. June 10, 2013) (holding that the

district court erred by denying estoppel where insurance company "was silent when it had the duty to speak," insured "had the right to rely on its insurance provider to make it aware of possible coverage options," and insured "would be harmed if estoppel is not applied" because it had "already incurred an unreimbursed loss"); *Brenner v. Nordby*, 306 N.W.2d 126, 127 (Minn. 1981) (holding that trial court erred in granting summary judgment to defendant where plaintiff "assert[ed] that defendant failed to deny liability" and instead said it "was conducting an investigation that might lead to settlement").

Falls Lake responds that "[t]o plead equitable estoppel," Harmony "would have to allege that there were communications from Falls Lake" during a specific period—the time between the initial denial on November 23, 2022, and the anniversary of the storm on May 11, 2023. (Doc. 31 at 12–13.) Not so. In Minnesota, promises or inducements "may consist of silence or a negative omission to act when [the party had a] duty to speak or act." *Pollard*, 698 N.W.2d at 454 (emphasis removed) (quoting *Dimond v. Manheim*, 63 N.W. 495, 497 (1895)). And Minnesota law imposes on insurers a duty to warn insureds about an approaching suit deadline at least 60 days in advance—a duty that Falls Lake allegedly did not fulfill. *See* Minn. Stat. § 72A.201, subd. 4(8) (requiring insurers "to advise in writing an insured or claimant who has filed a notification of claim known to be unresolved, and who has not retained an attorney, of the expiration of a statute of limitations at least 60 days prior to that expiration").

Falls Lake counters that § 72A.201 cannot support waiver or estoppel because Minnesota's Unfair Claims Practices Act, Minn. Stat. §§ 72A.17–.32, does not confer a

private right of action.  (Doc. 31 at 6–7, 12–13.)[1, 2]  In support, Falls Lake cites *O'Reilly*, 474 N.W.2d at 223–24, and *TGA Dev. Inc. v. N. Ins. Co. of N.Y.*, 62 F.3d 1089, 1091 (8th Cir. 1995).  But both cases are distinguishable.

The *O'Reilly* court first held that the trial court erred by rejecting the insured's estoppel claim.  474 N.W.2d at 222–23.  Then it briefly addressed alternative arguments, including the standalone claim that "[the insurer's] failure to notify [the insured] of its intent to rely on the contractual limitation period as a bar to her claim violated [the Unfair Claims Practices Act]."  *Id.* at 223.  In rejecting that claim, the court simply reiterated that the Act "does not confer a private cause of action."  *Id.* at 223–24 (citing *Morris v. Am. Fam. Mut. Ins.*, 386 N.W.2d 233, 238 (Minn. 1986)).  It did not consider whether the Unfair Claims Practices Act creates any legal duties relevant to equitable estoppel—a completely different claim.  Indeed, it specifically noted that "[a]ny claim of estoppel arising from [the insurer's] representations . . . [could] be presented to the trial court on remand."  *Id.* at 223.

In *TGA*, the Eighth Circuit addressed an insured's argument that a policy exclusion did not bar its claim "because the insurance company failed to identify it [in the denial letter] as a basis for denying coverage as required by Minnesota law."  62 F.3d at 1091 (citing Minn. Stat. § 72A.201, subd. 4(11) (1994)).  The court disagreed, reasoning that the Unfair Claims Practices Act "creates no private remedies, and thus no estoppel can be

---

[1] In addition, Falls Lake asserts in a footnote that "[e]quitable estoppel requires a ***wrongful*** act by the party to be estopped."  (Doc. 31 at 13 n.6.)  Falls Lake is incorrect.  Wrongfulness is required only if the government is the party to be estopped.  *Compare City of North Oaks v. Sarpal*, 797 N.W.2d 18, 25 (Minn. 2011), *with Pollard*, 698 N.W.2d at 454.

[2] Falls Lake also argues that § 72A.201, subd. 4(8), only applies to statutes of limitations, not suit limitation provisions in policies.  (Doc. 37 at 1–2.)  The Court agrees with Harmony's counterargument that "[s]uit limitations clauses in insurance policies cannot be separated from the statutes authorizing them" (Doc. 36 at 6)—particularly where, as here, their length depends on the length of the applicable statute of limitations.

16

predicated on its violation." *Id.* (citations omitted).  In support, the court cited *Northwest Airlines v. Federal Insurance*, 32 F.3d 349, 357 (8th Cir. 1994), for the proposition that under Minnesota law, "waiver cannot be used to bring within the coverage of an insurance policy risks not covered by its terms." *TGA*, 62 F.3d at 1091.  In other words, the court did not broadly hold that the Unfair Claims Practices Act imposes no duties relevant to an estoppel claim.  It simply reiterated Minnesota's longstanding rule that waiver and estoppel arguments cannot be used to expand coverage.  *See, e.g.*, *Shannon v. Great Am. Ins.*, 276 N.W.2d 77, 78 (Minn. 1979) (holding it "improper to impose coverage liability upon an insurer for a risk not specifically undertaken and for which no consideration has been paid").

Unlike in *TGA*, Harmony does not seek to expand coverage.  Estopping Falls Lake from arguing that Harmony's suit is time-barred does not eliminate exclusions from the Policy.  *Cf. Nw. Airlines*, 32 F.3d at 357 (citing *Malakowsky v. Johannsen*, 374 N.W.2d 816, 817–18 (Minn. Ct. App. 1985)).  Nor does it increase the Policy's payout limits. *Cf. Shannon*, 276 N.W.2d at 78.  Nor does it extend the Policy's effective dates.  *Cf. Cont'l Ins. v. Bergquist*, 400 N.W.2d 199, 201 (Minn. Ct. App. 1987).  In short, estoppel would not violate Minnesota's rule that courts should not impose liability coverage "for risks [the insurer] did not undertake and which were not paid for." *Id.*  A policy's suit limitations period is not a risk that an insured pays an insurer to take on.

All told, the Court finds as a matter of law that Harmony's suit is not time-barred because the proper limitation under the Policy is two years.  And regardless, Harmony has plausibly alleged facts to support claims that the one-year limitation was unreasonable, that

Falls Lake waived it, and that Falls Lake should be equitably estopped from asserting it. So dismissal is unwarranted.

## III.   Motion to Compel Appraisal and Appoint an Umpire

Turning to Harmony's Motion to Compel Appraisal and Appoint an Umpire, the Court treats it as one for partial summary judgment seeking the remedy of specific performance. *See McCoy v. Am. Fam. Mut. Ins.*, 189 F. Supp. 3d 896, 900 (D. Minn. 2016) (collecting cases).  The Court views the facts in the light most favorable to Falls Lake, making no credibility determinations and giving Falls Lake the benefit of all reasonable inferences to be drawn from the record.  *Cottrell v. Am. Fam. Mut. Ins., S.I.*, 930 F.3d 969, 971 (8th Cir. 2019).  The Court will only grant Harmony's motion if there is no genuine dispute of material fact and Harmony is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To succeed on its motion to compel, the undisputed facts must show that (1) there was a valid agreement; (2) Harmony performed any conditions precedent to demanding that Falls Lake engage in an appraisal; and (3) Falls Lake breached the agreement.  *Darmer v. State Farm Fire & Cas. Co.*, 611 F. Supp. 3d 726, 751 (D. Minn. 2020).

Falls Lake does not dispute that the Policy is a valid agreement.  Nor does it dispute that it has refused to participate in the appraisal process.  It only argues that a condition precedent to appraisal has not been met.  (Doc. 28 at 20–21.)

The Policy's "Appraisal" provision reads:

> If [Harmony] and the [Falls Lake] fail to agree on the amount
> of loss, each, upon the written demand either of [Harmony] or
> of [Falls Lake] made within 60 days after receipt of proof of

18

loss by [Falls Lake], shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of [Harmony] or of [Falls Lake], such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. [Harmony] and [Falls Lake] shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

If there is an appraisal, [Falls Lake] will still retain its right to deny the claim.

(Doc. 12-1 at 48 ¶ 21.) Thus, the Policy seems to require only two conditions to trigger an appraisal—the parties must "fail to agree on the amount of loss" and one of them must demand appraisal in writing "within 60 days after receipt of proof of loss by [Falls Lake]." (Doc. 12-1 at 48 ¶ 21.)

Nonetheless, Falls Lake argues that the Policy contains a third condition— compliance with the "Duties of the 'Named Insured'" provision in a separate paragraph of the Policy. (Doc. 28 at 20.)[3] Under that provision, "[i]t is a condition precedent to any payment of loss that [Harmony] must see that [several things] are done in the event of loss or damage to insured property as soon as possible." (Doc. 12-1 at 51 ¶ 35.) Among the

---

[3] Falls Lake also argues that Harmony's demands are invalid because they do not "clearly state what issues [Harmony] seeks to appraise," and thus "it is unclear whether the issues [Harmony] seeks to appraise are appraisable." (Doc. 28 at 19.) This argument is unpersuasive. By its very nature, an appraisal is designed to resolve a disagreement about the amount of loss. Falls Lake concluded that the amount of loss is zero because the storm did not cause any of the damage, while Harmony claimed it was $2,382,132.10. (*Compare* Doc. 1-1 at 11 ¶ 25, *with id.* at 20 ¶ 81.) To the extent that Falls Lake argues that the issue of causation is outside the scope of an appraisal, it is incorrect. *See, e.g.*, *Quade v. Secura Ins.*, 814 N.W.2d 703, 704 (Minn. 2012); *McCoy v. Am. Fam. Mut. Ins.*, 189 F. Supp. 3d 896, 902 (D. Minn. 2016); *Snyder v. Am. Fam. Ins.*, No. 16-cv-458, 2016 WL 5796838, at *3 (D. Minn. Oct. 10, 2016).

things that Harmony must do is "[c]ooperate with [Falls Lake] and its retained adjustors and experts in the investigation of the claim by providing requested documents and information as soon as possible." (*Id.*)  And according to Falls Lake, Harmony violated this duty by responding to only two of the thirteen requests for information that Falls Lake made in July 2023.  (Doc. 28 at 20.)

The Court disagrees with the premise that fulfilling the Duties provision is a condition precedent to appraisal.  The Duties provision does not reference the Appraisal provision.  (*Compare* Doc. 12-1 at 51 ¶ 35, *with id.* ¶ 21.)  *Cf. Silverado Park Ass'n v. Country Mut. Ins.*, No. 23-cv-3687, --- F. Supp. 3d ----, 2024 WL 3656792, at *4 (D. Minn. July 29, 2024) (rejecting argument that a "Loss Payment provision" established conditions precedent to appraisal where it did "not refer to the appraisal provision" and the appraisal provision did not refer to it).  Plus, the Duties provision expressly states that it is "a condition precedent to any *payment of loss*," not to appraisal.  (Doc. 12-1 at 51 ¶ 35 (emphasis added).)  This language makes sense because appraisals, which deal with amount of loss, are "generally intended to take place before suit is filed," while "coverage questions" like whether the insured fulfilled its duties are "reserve[d] to the courts." *Quade v. Secura Ins.*, 814 N.W.2d 703, 708 (Minn. 2012); *see also Parr v. Gonzalez*, 669 N.W.2d 401, 407 (Minn. Ct. App. 2003) (treating cooperation as a coverage question).

The cases that Falls Lake cites to the contrary are not on point.  In *St. Panteleimon Russian Orthodox Church v. Church Mutual Insurance*, this Court adopted the report and recommendation of Magistrate Judge Jeffrey J. Keyes after no objections were filed.  No. 13-cv-1977, 2013 WL 6190400, at *1 (D. Minn. Nov. 27, 2013).  There, the insurer paid

out $59,281.76 to repair storm damage, but the insured was dissatisfied with that amount and demanded an appraisal. *Id.* at *2. Nonetheless, the insured did not provide any information supporting a greater loss; it merely submitted a "Proof of Loss Statement" asserting that its loss was the full policy limit of $1,046,500 "without ever disclosing the contours of [its] claim." *Id.* at *2, *6. Under these circumstances, Judge Keyes found that there was no real "disagreement on the amount of loss" because the insurer had "no idea what it was being asked to pay for or how much it was being asked to pay." *Id.* at *6

The Honorable John R. Tunheim followed suit in *Darmer v. State Farm Fire and Casualty Company*, No. 17-cv-4309, 2018 WL 3325908 (D. Minn. July 6, 2018). In that case, the insured submitted a $920,499.20 claim for losses from a fire, including $330,624 for personal property inside the house, but he did not submit an inventory of his personal property to prove the loss. *Id.* at *2. Later, a public adjuster working for the insured submitted a revised proof of loss claiming $2,950,851.04 in losses, along with an inventory of 3,200 items—many of which were purchased in the last four years. *Id.* And when the insurer inspected documentation of those purchases, it found "a number of discrepancies" where the insured "inflated the value of items." *Id.* at *2. Then, just before the insured was set to be examined under oath, he sued. *Id.* at *3. Judge Tunheim found that there was no disagreement over the amount of loss because the insurer did not have the information it needed to "independently assess the amount of loss." *Id.* at *5. Indeed, the record suggested that the insured "attempted to mislead [the insurer] about the value of his loss." *Id.* at *6.

Here, by contrast, both parties reached a conclusion as to the amount of loss, so it is beyond dispute that the parties "fail[ed] to agree on the amount of loss." (Doc. 12-1 at 48 ¶ 21.) *Cf. Silverado Park*, 2024 WL 3656792, at *3 (finding that "the parties 'disagree on the amount of loss'" where "three separate estimates provide[d] differing assessments of the full cost of repairs"). Harmony did not simply assert that it was entitled to the full policy limit. Rather, its public adjuster established the contours of its claim by "preparing an estimate for the replacement cost for damages occasioned by the Storm in the amount of $2,382,132.10." (Doc. 1-1 at 11 ¶ 25.) And Falls Lake was not unable to reach a conclusion about the amount of loss, nor was it misled by Harmony. Rather, Falls Lake concluded by November 2022 that Harmony experienced no loss, and there is no suggestion that Harmony was acting in bad faith when it failed to produce all the information Falls Lake requested. (Doc. 1-1 at 12 ¶ 31, 19–20 ¶¶ 80–81.)

All told, there is no genuine dispute that the Appraisal provision's conditions have been met, so the Court grants partial summary judgment on that issue and compels appraisal.

As for appointing an umpire, neither party disputes that the appraisers have failed to agree on one, and the record shows a stalemate. (Doc. 19-13 at 2.) Still, the Court believes they should have a second opportunity to agree on an umpire now that Falls Lake is compelled to participate in the appraisal process. The Court therefore orders the appraisers to meet and confer to "select a competent and disinterested umpire" within fifteen business days. (Doc. 12-1 at 48 ¶ 21.) If they still cannot agree, the parties shall each submit to the Court a new list of preferred umpires along with evidence of their

competence and disinterest, including evidence of their experience as a neutral umpire, reputation in the industry for fairness and neutrality, affiliations with either party (if any), and prior work involving either party (if any).

## IV.    Order

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant's Motion to Dismiss is **DENIED**;

2.    Plaintiff's Motion to Compel Appraisal and Appoint an Umpire is **GRANTED**;

3.    Defendant is **COMPELLED** to participate in the appraisal process as described in Paragraph 21 of the Policy; and

4.    The appraisers shall meet and confer to select a competent and disinterested umpire by Monday, January 13, 2025.  If the appraisers are unable to agree, the parties shall submit their lists of preferred umpires to the Court by Friday, January 24, 2025.

Dated: December 19, 2024

/s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge